**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **Case No. 08-CR-057-12** |
| | : | |
| **OMAR TREVINO MORALES,** | : | |
| | : | |
| **Defendant.** | : | **Honorable Trevor N. McFadden** |
| | : | |

<u>**MOTION TO COMPEL LOCAL DETENTION**</u>

Omar Treviño Morales, by and through counsel, respectfully requests that the Court order that he be detained in the Washington, D.C. area rather than in FCI Lewisburg. In making this Motion, Mr. Treviño Morales relies upon his rights to a fair trial, to present a defense, to confront the evidence against him, to the effective assistance of counsel, to investigate and present both exculpatory and mitigating evidence, and other rights protected by the Fifth and Sixth Amendments to the United States Constitution.

In support of this Motion, Mr. Treviño Morales states as follows:

1. On August 20, 2024, the United States District Court for the District of Columbia issued an arrest warrant for Mr. Treviño Morales based on an indictment in this case. That same day, a grand jury sitting in the District of Columbia returned and filed a Fifth Superseding Indictment (the "Indictment") against Mr. Treviño Morales and his brother, Miguel Treviño Morales. *See* Document ("Doc.") 578.

2. Mr. Treviño Morales stands charged with four serious counts and faces the possibility of a life sentence.

3. Count One accuses Mr. Treviño Morales of engaging in a continuing criminal enterprise, in violation of 21 U.S.C. §§ 848(a), 848(b), 848(c), and 848(E)(1)(A) ("CCE"). Doc. 578 at 4–13.

4. In Mr. Treviño Morales's case, the government has alleged nineteen different violations that constitute the continuing series of violations required by 21 U.S.C. § 848(c)(2). Five of the alleged violations are murder conspiracies.

5. Count Two accuses Mr. Treviño Morales of conspiring to distribute five kilograms of cocaine and 1,000 kilograms of marijuana for importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963. Doc. 578 at 13–14.

6. Count Three accuses Mr. Treviño Morales of use of a firearm, including a machine gun, destructive device, semiautomatic assault weapon or pistol, during and in relation to a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime, where one or more of such firearms was brandished, discharged, a semi-automatic assault weapon, a machine gun, and a destructive device, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. Doc. 578 at 14–15.

7. Count Four accuses Mr. Treviño Morales of conspiring to commit international money laundering, in violation of 21 U.S.C. §§ 1956(a)(2)(A), 1952(a)(2)(B)(i), and 1956(h).  Doc. 578 at 15–16.

8. This is a complex case that involves a massive amount of discovery.

9. On March 12, 2025, the government filed a Motion for a Complex Case Designation and to Exclude Time Under the Speedy Trial Act (Doc. 668). In that motion, the government noted that "this case involves a complex international narcotics trafficking conspiracy . . . and continuing criminal enterprise . . . investigated over the

course of decades with a corresponding substantial volume of discovery, including

significant Spanish-language discovery and foreign evidence, expected." *Id.* at 7.

10. In the same motion, the government pointed out that its "initial discovery production

alone is expected to consist of more than 400,000 intercepted Spanish-language audio

communications." *Id.* at 6.

11. At the outset of this case, both Mr. Treviño Morales and his brother were located at

Northern Neck Regional Jail ("NNRJ") in Warsaw, Virginia. Mr. Treviño Morales's

brother remains at NNRJ.

12. In April, Mr. Treviño Morales was moved to MDC Brooklyn, a Bureau of Prisons

("BOP") facility in New York City. To visit Mr. Treviño Morales at this facility, Mr.

Treviño Morales's lawyers had to travel between eight and twelve hours round trip.

13. Because of the burdens MDC Brooklyn placed on Mr. Treviño Morales's ability to

prepare a defense, Mr. Treviño Morales filed a Motion to Compel Local Detention

(Doc. 722) on July 15, 2025.

14. On the following day, July 16, 2025, Mr. Treviño Morales was transported from MDC

Brooklyn to a hearing before this Court. At that hearing, the government informed the

Court and the defense that Mr. Treviño Morales would be housed locally instead of

being returned to MDC Brooklyn, mooting the motion.

15. From July 16, 2025, to November 18, 2025, Mr. Treviño Morales was housed at

Alexandria Adult Detention Center.

16. On November 18, 2025, Mr. Treviño Morales was moved to FCI Lewisburg, which is

in Lewisburg, Pennsylvania.

17. FCI Lewisburg is approximately ten hours round trip from Attorney Donovan, seven hours round trip from Attorney Retureta, and five-and-a-half hours round trip from Attorney Nieto. These time frames do *not* include gasoline or restroom stops, which are necessary given the distance.

18. FCI Lewisburg is not a pre-trial detention facility and does not have the in-person visitation access that is the norm for such facilities.

19. Since Mr. Trevino Morales's move to Lewisburg, counsel has been permitted to visit him only on Fridays and Sundays.

20. Despite the lengthy trip required, each legal visit is limited to three hours, from either 8–11 AM or 12–3 PM. These times are inflexible. For example, for a December 12, 2025, meeting, counsel asked if they could visit from 11–2 instead of 12–3 due to travel constraints. This request was denied.

21. Additionally, counsel cannot choose whether to visit in the morning or afternoon; that choice is made by the facility. (On January 2, 2026, for example, counsel was permitted to visit only from 8–11 AM.) The inflexible morning appointment times require counsel to travel on the eve of the visit and stay in a hotel.

22. Although counsel are currently working with FCI Lewisburg in hopes of obtaining a better visitation schedule, this would not alleviate the distance or Lewisburg's other visitation restrictions, which make it impossible for Mr. Treviño Morales to work effectively with his counsel.

23. For example, upon information and belief, Lewisburg has contact attorney-client visitation rooms but does not permit Mr. Treviño Morales to use them. As a result, Mr. Treviño Morales must visit with his attorneys through glass. It is impossible to

review this case's massive discovery effectively through the glass, as there is no way for counsel and Mr. Treviño Morales to share a computer.

24. Notably, these visitation restrictions have nothing to do with Mr. Treviño Morales's Special Administrative Measures ("SAMs"). The SAMs do not bar Mr. Treviño Morales from meeting with his counsel in person, reviewing discovery with counsel, meeting with counsel for more than three hours at a time, or meeting with counsel on days other than Friday and Sunday. These conditions are entirely due to his facility.

25. Since November 18, 2025, defense counsel has repeatedly contacted both the Government and the United States Marshals Service ("USMS") regarding Mr. Treviño Morales's location and the need for better access to Mr. Treviño Morales so that he can effectively prepare a defense.

26. The defense was informed in December that the USMS knew that Lewisburg was an untenable location and intended to move Mr. Treviño Morales in the new year. For this reason, the defense has attempted to work within the limitations of FCI Lewisburg. However, nearly three months have passed and the USMS indicates that it still does not have a timeline for Mr. Treviño Morales's relocation. Because his current location poses constitutionally intolerable burdens on his ability to effectively prepare a defense, Mr. Treviño Morales asks the Court to direct that he be relocated to a facility within the Washington, D.C., area.

## ARGUMENT

I.  **All Pretrial Defendants Have a Right to Effective Assistance of Counsel, Including Access to Counsel.**

All defendants are entitled to the effective assistance of counsel. *See* U.S. CONST., amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984); *Brewer v. Williams*, 430 U.S. 387, 398

(1977); *Gideon v. Wainwright*, 372 U.S. 335 (1963); *see also Coplon v. United States*, 191 F.2d 749 (D.C. Cir. 1951) ("No conviction can stand, no matter how overwhelming the evidence of guilt, if the accused is denied the effective assistance of counsel . . . ."). This "right to the assistance of counsel . . . is indispensable to the fair administration of our adversarial system of criminal justice." *Maine v. Moulton*, 474 U.S. 159, 168 (1985). "Embodying 'a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself,' the right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding." *Id.*(quoting *Johnson v. Zerbst*, 304 U.S. 458, 462–63 (1938)) (citation omitted).

The right to the effective assistance of counsel is not simply a trial right. Rather, the accused needs effective assistance at every critical step of a representation, including before trial. In *Moulton*, the Supreme Court observed that "the assistance of counsel is not limited to participation in a trial" and that "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Moulton*, 474 U.S. at 170; *see also Powell v. Alabama*, 287 U.S. 45 (1932) (noting that even an educated defendant "requires the guiding hand of counsel at every stage of the proceedings against him"); *Brewer*, 430 U.S. at 398 (1977) (describing the right to assistance of counsel as a "vital need at the pretrial stage").

Federal courts have the power to ensure that pretrial detainees have the access to counsel required by the Sixth Amendment. *See, e.g.*, *Campbell v. McGruder*, 580 F.2d 521, 532 (D.C. Cir. 1978) ("Conditions of confinement that impede a defendant's preparation of his defense . . . are constitutionally suspect . . . ."); *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1051 (8th Cir. 1989) ("Pre-trial detainees have a substantial due process interest in effective communication

with their counsel and in access to legal materials. When this interest is inadequately respected during pre-trial confinement, the ultimate fairness of their eventual trial can be compromised."); *Covino v. Vermont Dep't of Corr.*, 933 F.2d 128 (2d Cir. 1991) (remanding for consideration of "whether the transfer unconstitutionally impaired [the defendant's] right of access to his trial counsel."); *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) ("[A] detainee's constitutional rights may be infringed where the transfer [from one jail/prison to another] interferes with his right to assistance of counsel"); *see also United States v. Mikhel*, 552 F.3d 961 (9th Cir. 2009) (finding that the Sixth Amendment right to appellate counsel was violated where Special Administrative Measure prohibited a defense investigator from meeting with defendant without an attorney present where the defendant was confined at a location distant from his attorneys' office).

For example, the Third Circuit Court of Appeals has addressed a similar situation in which Pennsylvania pretrial detainees were placed in remote prison facilities instead of their local jails. *See Cobb v. Aytch*, 643 F.2d 946 (3d Cir. 1981). The Court noted that "that pretrial detainees have federally protected liberty interests that are different in kind from those of sentenced inmates." *Id.* at 957. Specifically, "[p]retrial detainees . . . retain several constitutionally protected liberty interests relevant to the conditions of their confinement that are not fully available to sentenced inmates." *Id.* Based on these rights, the Third Circuit upheld the core of an injunction designed to prevent pretrial detainees from being moved to prisons where they would have reduced access to counsel.

In *Cobb*, the prisoner transfers at issue prolonged detention, impeded investigation, and drastically reduced visitation by family and friends. *Id.* at 960. But the Third Circuit was *most* concerned about the right to effective assistance of counsel, with the Court emphasizing that the

"substantial interference with the right to effective assistance of counsel resulting from pretrial transfer to distant places." *Id.* at 957, 960. The Court also noted that "while the transfers interfered with what the prisoners could do to help themselves, *they interfered even more drastically with what counsel might have been able to do for them*." *Id.* at 960 (emphasis added). Notably, the transfers at issue in *Cobb* resulted in detainees being held at distances similar to the one at issue in this case.  In *Cobb*, detainees were held at distances of 90, 120, 201, 220, and 300 miles from the pretrial venue.  In this case, Mr. Treviño Morales is being held 184 miles from the United States District Court of the District of Columbia and approximately 298, 184, and 142 miles from his lawyers.

In addition to the constitutional rights of pretrial detainees, federal law confers a statutory obligation to ensure that the accused have adequate access to counsel. 18 U.S.C. § 3142(i)(3) provides that pretrial detention orders "shall . . . direct that the person be afforded reasonable opportunity for private consultation with counsel[.]" Moreover, the district court has the authority to ensure that this statutory right is respected. As the Seventh Circuit has observed, the district court "retains jurisdiction over all pretrial, trial and post-trial aspects of" a pending case, including "the statutory authority to protect [the accused's] access to counsel." *Falcon v. United States Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995).  Thus, (1) Mr. Treviño has a constitutional and statutory right to effective communication with and access to his counsel, and (2) this Court has the power to ensure that those rights were adequately protected.

II.    **Mr. Treviño Morales's Continued Detention at FCI Lewisburg Interferes with His Constitutional and Statutory Rights to Access to Counsel.**

Mr. Treviño Morales cannot be constitutionally detained at FCI Lewisburg during this pre-trial period. As discussed above, Mr. Treviño Morales has a constitutional right to access to counsel. That right includes not only the access to communication within counsel, but also the

right to access legal materials—including discovery. Like any criminal defendant, Mr. Treviño

Morales has a right to review the evidence in the case, collaborate with counsel on discovery

review, and engage in active preparation of his case. Mr. Treviño Morales's location at FCI

Lewisburg renders it impossible for counsel to effectively represent Mr. Treviño Morales and

renders it impossible for him to prepare a defense.

As detailed above, FCI Lewisburg is prohibitively far from counsel. Traveling to FCI

Lewisburg takes Attorney Donovan approximately ten hours per round trip, Attorney Retureta

seven hours per round trip, and Attorney Nieto five-and-a-half hours per round trip. Notably,

these time frames do not account for necessary stops, nor do they account for the onslaught of

winter weather that has affected the defense team more recently. This distance alone would make

it impossible for Mr. Treviño Morales to have adequate access to counsel. *See Cobb v. Aytch*,

643 F.2d at 960.

The distance is not, however, the only impediment that FCI Lewisburg places on attorney

access. Simply put, FCI Lewisburg is not a pretrial facility and does not have procedures in place

to accommodate the regular visitation necessary for a serious criminal defense. FCI Lewisburg

was historically a U.S. Penitentiary ("USP"), after which it was a Special Management Unit

("SMU") from 2009–2020.[1] Since then, the facility has "fulfilled a variety of missions for the

BOP and inherited different inmate populations as ad hoc needs arose." *Id.* at 3. A recent OIG

Report concluded that there are "serious issues at FCI Lewisburg related to staffing, inmate

healthcare quality, infrastructure, single-celling of inmates in restrictive housing,[2] suicide

---

[1] Department of Justice, Office of the Inspector General, Inspection of the Federal Bureau of
Prisons' Federal Correctional Institution Lewisburg 2 (September 2024),
https://oig.justice.gov/sites/default/files/reports/24-113.pdf ("OIG Report").
[2] Although not the focus of this motion, it is worth noting that Mr. Treviño is being held in the
single-cell restrictive housing about which the OIG Report expressed concern. *See id.* at 20

9

prevention practices, and employee professionalism." *Id.* at i. Simply put, FCI Lewisburg is a multi-use facility struggling through a transition phase, not a pretrial detention center in which there are adequate opportunities for detainees who have not been convicted of a crime to engage with defending their cases.

For example, FCI Lewisburg permits in-person attorney-client visitation only on Fridays and Sundays. Permitting attorney visitation on a *single weekday* is far below the norm at pretrial facilities, which usually provide multiple attorney-client visitation times every day. And because Saturday falls between Friday and Sunday, counsel cannot make better use of the travel time by visiting Mr. Treviño on two consecutive days.[3] Moreover, despite the hours of travel required, each attorney-client meeting is limited to a single three-hour time slot. The time slot is between 8–11 AM or 12–3 PM, and the attorney cannot choose the time. For example, on multiple occasions when counsel has requested adjustments to the time slot to accommodate travel plans, those requests have been denied. Traveling to the 8 AM time slot in Lewisburg is particularly difficult, but often that is the only time permitted.

---

("The OIG has long identified that single-cell confinement may negative affect an inmate's mental health and increase the risk of suicide."). According to FCI Lewisburg, "despite the risks associated [with] single-celling inmates in restrictive housing, the management practice was 'normal' at FCI Lewisburg because the variety of its missions creates a composition of inmates that must be separated from one another." *Id.* at 19–20. Mr. Treviño Morales's long-term single-cell solitary confinement is exacerbating the stress caused by inadequate access to his legal team and his insufficient opportunities to prepare his defense. Because the defense cannot provide Mr. Treviño Morales with access to his discovery or regular visitation, and because he has vanishing little other access to the outside world (one fifteen-minute call per month), Mr. Treviño Morales is largely trapped in extreme isolation.

[3] As noted above, counsel is currently working with FCI Lewisburg in hopes of obtaining a better visitation schedule that will allow for additional weekday meetings with Mr. Treviño Morales. But even if this is successful, it will not be an adequate solution given the distance between counsel and Lewisburg, as well as the other restrictions FCI Lewisburg places on attorney-client visitation.

In addition to these practical obstacles, FCI Lewisburg refuses to permit Mr. Treviño

Morales to have contact visitation with his attorneys. Upon information and belief, FCI

Lewisburg *does* have contact visitation, but has denied Mr. Treviño Morales access to it. Thus,

all visitation with Mr. Treviño Morales must be conducted in a small booth, through glass.

Visitation with more than one member of the defense team at a time is difficult, as there is a

single phone connecting the sides of the booth. Because two visitors cannot share the phone, the

defense team must talk through a slot that is designed to hand papers through the wall. Only one

member of the defense team can sit in front of the slot, so the other visitor(s) present struggle to

hear Mr. Treviño Morales.

More importantly, this set up makes it impossible to review discovery or evidence in the

case. This is a complex case with voluminous discovery that includes hundreds of thousands of

recordings, Spanish-language documents, and foreign materials. Notwithstanding the volume of

discovery, there is a protective order that prevents Mr. Treviño Morales from "retain[ing]

custody of any of the protected custody." Doc. 671 at 2. It is thus incumbent on the defense team

to review the extensive discovery with Mr. Treviño Morales, a task that cannot be accomplished

in conditions where the team cannot share a laptop with Mr. Treviño Morales.[4]

The fact that Mr. Treviño Morales is a pretrial detainee, *not* an inmate serving a prison

sentence, distinguishes him from most men held at FCI Lewisburg. Even assuming that the legal

visitation conditions at Lewisburg are adequate for a convicted inmate—a question not before

this Court—they remain woefully inadequate for someone who is presumed innocent and has a

---

[4] For the same reason, although FCI Lewisburg provides video visitation, counsel cannot use that
remote visitation to review evidence with Mr. Treviño. Moreover, because of the design of the
video visitation cell at FCI Lewisburg, Mr. Treviño must either stand for the entire video meeting
or sit off screen, where he is unable to see his attorneys and his attorneys are unable to see him.

right to defend himself. For nearly three months, Mr. Treviño Morales has been unable to effectively review discovery or communicate adequately with his counsel, depriving him of valuable pretrial preparation time. Therefore, in addition to the physical distance separating the attorneys and Mr. Treviño Morales, the inadequate legal visitation conditions of FCI Lewisburg further separate counsel and client.

In sum, Mr. Treviño Morales does not have reasonable access to counsel or the evidence in his case. This is a constitutionally intolerable situation that is having an ongoing negative impact on Mr. Treviño Morales's ability to prepare his defense. Fortunately, this situation that can be easily remedied by relocating Mr. Treviño Morales to the D.C./Northern Virginia area. Mr. Treviño Morales thus asks the Court to exercise its authority to ensure that he is located within the Washington, D.C./Virginia metropolitan area, where his defense team can meet its constitutional obligations to him. Although the allegations against Mr. Treviño Morales are serious, he is a human being with a protected liberty interest, like any other criminal defendant. This Court should require the USMS to relocate Mr. Treviño Morales to a local facility where he can have adequate access to his counsel and the evidence in his case.

## **CONCLUSION**

For these reasons, Mr. Treviño Morales respectfully moves this Court for an order directing that Mr. Treviño Morales be detained locally, not at FCI Lewisburg.

Respectfully submitted,

/s/ *Bernadette M. Donovan*

Bernadette M. Donovan                    Manuel J. Retureta, Esq.
VA BAR 82054                             DC BAR 430006
Donovan & Engle, PLLC                    300 New Jersey Avenue, NW
1134 East High Street, Unit A            Suite 300
Charlottesville, VA 22902                Washington, D.C. 20001
Office 800-428-5214                      Office 202-450-6119
Fax 434-465-6866                         mjr@returetawassem.com
bernadette@donovanengle.com

Christopher C. Nieto, Esq.
MD BAR
Nieto Law Office
233 East Redwood Street, Suite 1000C
Baltimore, MD 21202
Office 443-863-8189
cnieto@nietolawoffice.com

**Counsel for Omar Treviño Morales**

## CERTIFICATE OF SERVICE

I, Bernadette Donovan, Esq., hereby certify that on this February 14, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Bernadette M. Donovan*