UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 08-CR-057-12** |
| v. | |
| **OMAR TREVINO MORALES,**<br>   also known as "42, and "Z-42," | |
| Defendant. | |

## GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
## MOTION TO COMPEL LOCAL DETENTION

The United States respectfully submits this response in opposition to the Motion to Compel Local Detention ("Motion") in the above-captioned case filed by the Defendant Omar Trevino Morales (ECF No. 790).

### BACKGROUND

The Defendant and his brother and co-defendant, Miguel Trevino Morales, are leaders of a violent international drug trafficking organization ("DTO") based in Mexico known at various times as The Company, Los Zetas, and the Cartel del Noreste ("CDN"). By at least 2008, Miguel Trevino Morales had worked his way up to second in command of the Los Zetas, with the Defendant following closely in his brother's footsteps within the hierarchy of the cartel. Miguel Trevino Morales then assumed leadership of the cartel after the Los Zetas' leader was killed in 2012. When Miguel Trevino Morales was arrested in 2013, he continued to direct the cartel's activities from Mexican prison, but the Defendant took the mantle of leadership for the cartel's day-to-day leadership until his own arrest in 2015. Along with Miguel Trevino Morales, he continued to direct the cartel's activities until their expulsion from Mexico to the United States on

February 27, 2025. Over the course of his time in Los Zetas, the Defendant was responsible for trafficking enormous quantities of cocaine and marijuana to and from Mexico to the United States. The Defendant also directed—and personally inflicted—terroristic violence on civilian populations, politicians and law enforcement, and other drug traffickers.

A grand jury sitting in this district returned an indictment against Miguel Trevino Morales and several co-conspirators on March 13, 2008, ECF No. 3, and returned a superseding indictment with charges against the Defendant on June 9, 2009, ECF No. 6. On August 20, 2024, a grand jury charged both Miguel Trevino Morales and the Defendant in a Fifth Superseding Indictment with (1) a continuing criminal enterprise ("CCE") count under 21 U.S.C. § 848 (Count One); (2) a narcotics conspiracy count under 21 U.S.C. §§ 959, 960 and 963 (Count Two); (3) a firearms count in violation of 18 U.S.C. § 924(c) (Count Three); and (4) an international money laundering conspiracy count in violation of 18 U.S.C. § 1956(h) (Count Four). ECF No. 578.

## HISTORY OF THE DEFENDANT'S PRETRIAL DETENTION

On February 27, 2025, the Defendant was transferred from Mexico to the United States and has remained in the custody of the United States Marshals Service ("USMS") from that date to the present. The Defendant initially was held in pretrial detention, along with his brother, at Northern Neck Regional Jail ("NNRJ") in Warsaw, Virginia. In April 2025, the Attorney General of the U.S. Department of Justice directed the USMS to implement Special Administrative Measures ("SAMs") that govern the conditions of the Defendant's pretrial detention. The same month, USMS transferred the Defendant to the Metropolitan Detention Center, Brooklyn ("MDC Brooklyn"), a Bureau of Prisons ("BOP") facility in New York City. Defense counsel requested that the Defendant be transferred back to a local facility, and, after the Government conferred with USMS about the availability of local housing, on July 16, 2025, USMS transferred the Defendant

2

to Alexandria Adult Detention Center ("ADC"), located in Alexandria, Virginia. *See also* Def.'s Motion to Compel Local Detention, ECF No. 722. (July 15, 2025). ECF No. 722.

On November 2, 2025, while housed at ADC, the Defendant made threatening statements towards a deputy assigned to the facility. According to a report issued by ADC Alexandria, the Defendant stated to a deputy in Spanish that the deputy "likes Doberman dogs" and that the Defendant knows "a lot of information" and can even find the deputy's address. The Defendant further stated to "give him a month and he will find out everything" about the deputy. The deputy then asked the Defendant how he would find out this information, and the Defendant stated that he commanded 3,000 people in Mexico and knows how to "get around." Based on the Defendant's insinuation to his control of the cartel and his prolific history of violent behavior, officials at ADC determined he could not be safely housed at the facility. Thus, on November 18, 2025, USMS transferred the Defendant to Federal Correctional Institute ("FCI") Lewisburg, which is located in Pennsylvania, and the Defendant currently remains there.

## BACKGROUND OF FCI LEWISBURG

FCI Lewisburg is a federal prison located in Kelly Township, Pennsylvania. According to FCI Lewisburg, the facility has housed pre-trial detainees since 2021, including dozens of defendants in cases prosecuted in the U.S. District for the District of Columbia. According to the USMS, FCI Lewisburg is currently accommodating the provisions of the SAMs and is the closest pre-trial detention facility to Washington, D.C. that currently has the administrative capacity to house the Defendant.[1]

---

[1] The USMS is working on transferring Defendant to a facility closer to Washington, D.C., but there are limited options that can accommodate SAMs.

According to BOP officials serving FCI Lewisburg, the Defendant is permitted both in-person and virtual visitation options to afford the Defendant opportunities to consult with his attorneys and defense team. While FCI Lewisburg cannot currently accommodate contact visitation given the SAMs and limited staffing,[2] FCI Lewisburg reports that in-person, no-contact visitation is currently permitted between 8:00AM and 2:00PM seven days a week.[3] During these visits, members of the Defendant's defense team may speak with the Defendant through a plexiglass barrier that contains a large slot that allows documents to be passed between the parties. According to FCI Lewisburg, a laptop, which the Defendant's attorneys are allowed to bring into the facility, can be placed near the slot to allow audio to be shared. Video visitation is also permitted and is available between 8:00AM and 3:00PM Monday through Friday. Video appointments must be booked for 1-hour increments 48 hours in advance. During these virtual visits, the Defendant can speak with his attorneys from a device and review discovery on a computer. According to records provided by FCI Lewisburg, since the Defendant's arrival at Lewisburg in mid-November 2025, members of the defense team have visited with him, either via virtual or in-person visits, on approximately 29 occasions (19 virtual and 10 in-person visits). These visits have occurred on every day of the week other than Saturday.

---

[2] According to BOP officials serving FCI Lewisburg, contact visits would require meetings in the main visiting room floor, where Defendant would need to be restrained and accompanied by a lieutenant and two officers. Moreover, these could only occur on Mondays through Thursdays when social visiting for the other inmates is not occurring.

[3] This is an updated visitation schedule as of the last week, and FCI Lewisburg informed the government that it verbally notified defense counsel of this updated schedule. The prior visitation schedule allowed in-person visitation between 8:00AM to 2:00PM Monday through Thursday, and either 8:00AM to 11:00AM or 12:00PM to 3:00PM Friday, Saturday, and Sunday.

**LEGAL STANDARD**

Defendants in the United States have a right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution. *See* U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984); *Brewer v. Williams*, 430 U.S. 387, 398 (1977); *Gideon v. Wainwright*, 372 U.S. 335 (1963). For those defendants that are detained pretrial, the Supreme Court has held that "inmates must have reasonable opportunity to seek and receive the assistance of attorneys" and that "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 418-419 (1974). Pretrial detention conditions may also violate the Sixth Amendment when they result in the "actual or constructive denial of the assistance of counsel altogether." *See Strickland*, 466 U.S. at 692.

A defendant's right to effective assistance of counsel is not without limitation or restriction, however. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) ("[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations."). Ensuring the security and internal order of a detention facility, for example, "are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546. Thus, when a pretrial detainee's Sixth Amendment right to counsel is implicated by an institutional restriction, "the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *See id.* at 547; s*ee also United States v. Hill*, 6 F. App'x 1, 1 (D.C. Cir. 2001) (affirming district court's denial of Sixth Amendment challenge to conditions of pretrial confinement because "the conditions of confinement are rationally connected to legitimate security concerns"); *United States v. Stanford*, 722 F. Supp. 2d 803, 812-813 (S.D. Tex.), *aff'd*, 394 F. App'x 72 (5th Cir. 2010)

5

(finding that defendant's pretrial detention did not violate his Sixth Amendment right to counsel because his visitation schedule allowed visits seven days a week for multiple hours at a time, and because defendant enjoyed frequent legal visitations during his detention). The defendant bears the burden of proving that he has been deprived of the effective assistance of counsel. *Premo v. Moore*, 131 S.Ct. 733, 739 (2011).

## ARGUMENT

The Defendant threatened a guard at the local facility he was previously housed in, ADC, and now contends that the condition he created—his transfer to FCI Lewisburg—violates his Sixth Amendment right to effective assistance of counsel, both because of the distance between FCI Lewisburg and his attorneys' home bases and because of FCI Lewisburg's visitation conditions. For the reasons discussed below, the Court should reject both of these arguments.[4]

**I.   THE DISTANCE BETWEEN FCI LEWISBURG AND THE DEFENDANT'S ATTORNEYS DOES NOT VIOLATE THE DEFENDANT'S RIGHT TO COUNSEL**

The Defendant argues that his detention in FCI Lewisburg violates his Sixth Amendment right to counsel because it is "prohibitively far from his counsel," who are based in Washington, D.C., Baltimore, Maryland, and Charlottesville, Virginia.[5] Motion at 9. The Court should reject this claim.

---

[4] The Defendant has failed to exhaust his administrative remedies as is required under the Prison Litigation Reform Act of 1995 ("PLRA"). *See* Gov'ts Resp. to Def.'s Mtn. for Relief from SAMs, ECF No. 789 at 7-9 (Feb. 13, 2026) (discussing the PLRA's exhaustion requirement for any prisoner challenge to prison conditions). Nonetheless, because the issues Defendant raises concern his ability to consult with counsel which directly affects the criminal case, *cf. id.* at 8 n. 6 (citing *United States v. Savage*, No. CRIM.A. 07-550-03, 2010 WL 4236867, at *6 (E.D. Pa. Oct. 21, 2010)), and, moreover, are easily resolvable on the merits, the Government has no objection to the Court addressing the Defendant's motion on its merits. *See, e.g., Ali v. District of Columbia*, 278 F.3d 1, 5 (D.C. Cir. 2002) (holding that PLRA exhaustion, though mandatory, is a claims processing rule subject to waiver).

[5] The Defendant's Charlottesville-based counsel is only approximately 60 miles closer to this Court, than the Defendant's Washington, D.C.-based counsel is to FCI Lewisburg.

6

When a Sixth Amendment claim is based on alleged inconvenience caused by the distance between a court and a pretrial detention facility, courts have required defendants to show that access to counsel was actually or constructively deprived, or that the defendant was prejudiced. For example, in *Allick*, the court found that a defendant's pretrial detention in a facility 120 miles away from his court-appointed counsel (on another island even—Puerto Rico) did not violate his Sixth Amendment right to counsel because "there [was] no indication that Defendant has missed hearings or that his legal proceedings, or his ability to participate therein, have otherwise been adversely impacted by his confinement." *United States v. Allick*, No. CRIM.A. 2011-020, 2012 WL 32630, at *4 (D.V.I. Jan. 5, 2012); *see also United States v. Lucas*, 873 F.2d 1279, 1280-81 (9th Cir. 1989) (rejecting defendant's argument that he was deprived of effective assistance of counsel when his pretrial detention in a facility 120 miles from his lawyer did not prevent communications between them); *United States v. Argraves*, No. 09-CR-117 MRK 2010 WL 283064, at *5 (D. Conn. Jan. 22, 2010) (finding no violation of right to counsel when defendant, facing charges in Connecticut district court, was detained in Rhode Island detention center approximately 110 miles away from his counsel because "this level of inconvenience does not amount to a denial of effective assistance of counsel."); *compare with Cobb v. Aytch* 643 F.2d 946, 960 (3d Cir. 1981) (finding violation of right to counsel when there was evidence that detainees missed interviews with counsel and court appearances because of detention in facilities between 90 and 220 miles away from court).

The Defendant has failed to demonstrate how the distance between FCI Lewisburg and his attorneys, while perhaps inconvenient, rises to the level of a violation of his Sixth Amendment right to access to counsel. In support of his argument, the Defendant relies heavily on *Cobb,* 643 F.2d 946. *See* Motion at 7-8. Specifically, the Defendant argues that because detainees in *Cobb*

were held in detention centers at distances similar to the distance between FCI Lewisburg and this Courthouse and the Defendant's attorneys, this Court should also find a violation of the Defendant's Sixth Amendment right to counsel. *See* Motion at 8. However, the Defendant's reliance on *Cobb* is misplaced. It was not the distance between the facilities and defense counsel that infringed the *Cobb* detainees' Sixth Amendment rights, but the assistance of counsel the detainees were unable to get because of that distance, such as missing interviews with their attorneys and appearances in court. *See Cobb,* 643 F.2d 946 at 951.

Here, unlike the *Cobb* detainees, the Defendant has made no showing that the current distance has interfered with his legal proceedings, or that he has been unable to meet with his attorneys, because it has not done either. As noted above, since his transfer on November 18, 2025, the Defendant has had almost 30 visits with his defense team, between in-person and virtual visits. Thus, without an articulable prejudice caused by the distance of the Defendant's detention from his attorneys, he cannot show a violation of his Sixth Amendment right to counsel. *See Allick*, 2012 WL 32630, at *2 (defendant failed to establish that his pre-trial confinement at MDC Guaynabo in Puerto Rico violated his Sixth Amendment right to counsel even where trial venue was located on St. Croix); *Lucas*, 873 F.2d at 1280-81 (finding that a defendant's pretrial detention in a facility 120 miles away from his court-appointed counsel did not violate his Sixth Amendment right to counsel); *Argraves*, 2010 WL 283064 at *5 (finding no violation of right to counsel when defendant, facing charges in Connecticut district court, was detained in Rhode Island detention center approximately 110 miles away from his counsel because "this level of inconvenience does not amount to a denial of effective assistance of counsel.").

## II.    FCI LEWISBURG PROVIDES SUFFICIENT ATTORNEY-CLIENT VISITATION AND DISCOVERY ACCESS

The Defendant argues that the visitation conditions at FCI Lewisburg violate his Sixth

Amendment right to counsel because its visitation schedule is "woefully inadequate" for the Defendant to engage with his attorneys and because the lack of contact visitation "makes it impossible to review discovery or evidence in this case." Motion at 11. Like the Defendant's argument above regarding distance, these conditions, too, fall short of stating a Sixth Amendment violation. FCI Lewisburg provides both ample opportunity for attorney-client visitation and communications, as well as sufficient discovery access during those visits, and the minor limitations imposed by the facility are rationally connected to safeguarding institutional security. Thus, the court should deny this claim as well.

The Defendant's current visitation schedule at FCI Lewisburg provides for sufficient opportunity for the Defendant to speak with his attorneys. Contrary to Defendant's claim that FCI Lewisburg "is not a pre-trial detention facility and does not have the in-person visitation access that is the norm for such facilities," Motion at 4, as stated above, FCI Lewisburg has held pre-trial inmates since 2021, and to that end, has reported that they do in fact have in-person attorney-client visitation access available for the Defendant: the Defendant's attorneys are currently permitted to visit the Defendant in-person any day of the week within a 6-hour timeframe, or in the alternative, via video visit Monday through Friday.[6] Courts have held that similar visitation schedules do not impermissibly restrict a defendant's right to counsel. In *Stanford*, for example, in finding that the defendant's pretrial conditions did not violate his Sixth Amendment right to counsel, the court noted that the defendant's detention facility allowed attorney-client visitation between 8:00 AM and 8:00 PM Monday through Thursday, and between 8:00 AM and 3:00 PM Friday through

---

[6] Defendant asserts that counsel is only permitted to visit him on Fridays and Sundays, Motion at 4, but that assertion is at odds with FCI Lewisburg's reported prior in-person visitation schedule, and it also ignores that, between video and in-person visitation, the Defendant's counsel have had visits with him Sunday through Friday.

9

Sunday. 722 F. Supp 2d at 812; *see also Hill*, 6 F. App'x at 1 (finding that the defendant's conditions of confinement did not violate his Sixth Amendment rights where the defendant retained opportunities to consult with his attorney in the courthouse cellblock and through telephone).

Second, the Defendant has adequate access to discovery during meetings with his attorneys, whether in-person or virtual. During in-person visits, as discussed, the Defendant can communicate with his defense team and review the evidence against him through a large slot in said barrier. While perhaps inconvenient, this certainly does not render review of discovery "impossible" as the Defendant claims. *See* Motion at 11. Moreover, though the Defendant claims that his counsel cannot review evidence with him during virtual visits, Motion at 11 n.4, FCI Lewisburg reported that the devices used for virtual visits have a screen-sharing function that allows the Defendant to simultaneously speak to his defense team and review evidence. While it is true that FCI Lewisburg currently does not allow contact in-person visits, that limitation is necessary to safeguard institutional safety: FCI Lewisburg cannot currently accommodate contact visitation given the Defendant's SAMs and limited staffing at the facility. *See supra* p. 4, n.2; *Bell* (noting that ensuring the security and internal order of a detention facility "are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees"); *Hill* 6 F. App'x at 1 (denying appeal where government demonstrated that "conditions of confinement are rationally connected to legitimate security concerns").

For all these reasons, FCI Lewisburg's visitation conditions provide ample opportunity for the Defendant to speak with his attorneys, review evidence, and aid in his defense.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's Motion.

Respectfully submitted this 3rd day of March, 2026.

                              Respectfully submitted,

                              MARGARET A. MOESER
                              Chief
                              Money Laundering, Narcotics
                              and Forfeiture Section Criminal Division
                              U.S. Department of Justice

By:          _____*/s/ Erik Cervantes*_____
                              ERIK CERVANTES
                              KIRK HANDRICH
                              D. HUNTER SMITH
                              JAYCE BORN
                              Trial Attorneys
                              Money Laundering, Narcotics
                              and Forfeiture Section
                              Criminal Division
                              U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

 I hereby certify that a copy of the foregoing was sent via ECF, to counsel of record for Defendant Omar Trevino Morales, on Tuesday, March 3, 2026.

        By:  */s/ Erik Cervantes*
            Erik Cervantes
            Trial Attorney
            Money Laundering, Narcotics
            and Forfeiture Section
            Criminal Division
            U.S. Department of Justice